José HERNÁNDEZ, Plaintiff and Appellant, v. FRANCISCO MATANZO and RAMÓN ZENO GANDÍA, Defendants and Apellants.

No. 3536. Argued June 30, 1925.—Decided December 9, 1925.

1. LEASE—UNLAWFUL DETAINER—EXECUTION—EVICTION.—When in an action of unlawful detainer the judgment is that the defendant vacate the property without ordering the destruction of any property, the writ of execution can not be extended to the destruction of a part of the defendant's property.

2. ID.—ID.—ID.—ID.—DESTRUCTION OF PROPERTY—DAMAGES.—If in executing a judgment in unlawful detainer a house of the defendant situated on a part of the property to be vacated is arbitrarily destroyed, the defendant has a right to recover in an action for damages the value of the house and its rents.

First District Court of San Juan, Charles E. Foote, J. Judgment for plaintiff with costs. *Modified and affirmed.*

*Campillo & Campillo* and *M. Tous Soto* for the plaintiff. *J. Martínez Dávila* for the defendants.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

On August 26, 1924, the First District Court of San Juan rendered judgment in this case that the defendants pay to the plaintiff $800 as the value of a certain house together with its rent at the rate of $34 monthly from August 7th to December 21, 1922, the date of filing the complaint, and the costs.

Both parties appealed. The defendants pray for reversal of the judgment and dismissal of the complaint. The plaintiff prays for an addition to the judgment allowing him

also rent from December 21, 1922, to the day on which the value of the house is paid.

We will consider first the appeal of the defendants. It is based on five assignments of error as follows:

1. The trial court erred in finding that there was no judgment in the action of unlawful detainer brought by defendant Matanzo against plaintiff Hernández.

2. The trial court erred in finding that the marshal of the municipal court wherein the said action of unlawful detainer was brought did not receive any writ for the execution of the judgment therein rendered.

3. The trial court erred in holding that the plaintiff has a right to be indemnified by the defendants for the value of the house and its rent.

4. The trial court erred in fixing the value of the house.

5. The trial court erred in adjudging that the defendants pay the value of the whole house.

[1] The evidence in the Municipal Court of San Juan, First Division, shows that an action of unlawful detainer was brought by Dr. Francisco Matanzo against José Hernández praying for "the immediate eviction of the defendant from the property of the plaintiff." In the complaint it was alleged that the plaintiff was the owner of a certain property of which a lot (described only by saying that it is bounded on all sides by the plaintiff's property) was leased by him to the defendant for the monthly rent of $2.50 which the defendant did not pay. No house is mentioned in the complaint.

The defendant was summoned. After trial the following entry was made in the judgment docket:

"Vol. No. 2, page 100, July, 1922, says: Francisco Matanzo vs. José Hernández, No. —— JUDGMENT.—The Court sustains the complaint and as a consequence thereof adjudges that the defendant vacate the property."

According to the opinion which we have formed of the case, it is not necessary to decide whether or not the fore-

going entry constitutes a judgment. Admitting for the purposes of the opinion that the procedure of unlawful detainer was followed and that judgment was rendered against the defendant, we understand that it was not executed in the proper manner.

Among the evidence introduced by the defendants is the motion of the plaintiff in the action of unlawful detainer for a writ of execution and the writ itself on which the return is endorsed.

The pertinent part of the writ reads as follows:

"WHEREAS, on July 6, 1922, Francisco Matanzo, plaintiff, recovered a judgment in this court against José Hernández, defendant, wherein it is ordered that you restore the possession of the following property:

"A parcel of land situated in the north section of the ward of Santurce composed of 5.55 acres of land, warning the defendant that he will be evicted if he does not move out within 15 days in the plaintiff's favor, with the costs upon the defendant.

"WHEREAS, the judgment roll in said action has been filed in the office of the secretary and that judgment was entered in the corresponding docket on the date mentioned;

"THEREFORE, you, the said Marshal, are hereby commanded to execute the said judgment and make due return of this writ."

"MARSHAL'S RETURN.

"I, Ramón Zeno Córdova, Marshal of the Municipal Court of San Juan, Sec. 1st:

"CERTIFY: That I received this writ of eviction on July 28, 1922, and that it was duly executed on August 7, 1922.

"Under this same date 1 return it to the secretary of this Municipal Court of San Juan, Section 1st.—San Juan, P. R., August 7, 1922.—(Sgd.) Ramón Zeno Córdova.—Marshal, Municipal Court, Section 1st."

The judgment does not state the time in which the eviction should be effected, thus failing to comply with section 16 of the Unlawful Detainer Act which provides that "a judgment declaring that .the action of unlawful detainer

may be maintained shall order the ejectment of the defendant within the following periods, computed from the time the judgment becomes final: Fifteen days, where a family residence or dwelling house is involved. Twenty days in all other cases.''

The period of fifteen days is fixed in the writ. From the return it appears that it was executed ten days after the receipt of the writ. How? The marshal states only in the return that on August 7, 1922, he duly executed the writ received on the 28th of the prior month of July. Testifying at the trial, the marshal said that sometime in the month of August, 1922, he received an order to evict the inmates of a house and give Dr. Matanzo possession of it; that he went to the house; that he gave the inmates eight or ten days in which to move out; that he returned and granted an extension of the time, taking from twenty to twenty-five days to execute the writ. And to the question, ''Who destroyed the house?'' he answered: ''I sent my assistant.'' The assistant, Julio Torres, testified ''that his action was limited to the destruction of part of the house under an order from the marshal . . . The next day when I went to the court the marshal asked me whether I had destroyed it and I answered in the affirmative . . . He said he never saw Hernández . . . That he was at the house only on the day when he destroyed it.''

Without referring to the testimony of the witnesses for the plaintiff, which might seem to be exaggerated, the conclusion stated is arrived at on the testimony of the officers of the municipal court. The property of the plaintiff, the defendant in the action of unlawful detainer, was illegally destroyed.

The eviction of the defendant was prayed for and the judgment so ordered. The law points out the course to be followed. Nowhere in it is the destruction of property mentioned. Although a house might be included in the first

part of section 18 of the Unlawful Detainer Act, the law was not complied with. A manifest abuse was committed.

In the case of *Peña & Balbás* v. *Toro, Marshal, ante,* page 130, it was held that "In executing a writ of ejectment the marshal must evict the defendant and remove his furniture and chattels; but the eviction only includes the personal property of the defendant and not property fixed to the soil, such as crops or other things that can not be removed from the property."

[2] Assignments three and four may be considered jointly. The fourth is argued very briefly. The third is argued as follows:

"1. Because in the lease contract between José Hernández and Dr. Matanzo the former bound himself to disoccupy and leave at the free disposal of Dr. Matanzo the lot belonging to Dr. Matanzo and occupied by his house; consequently he has no right to be indemnified in any amount, inasmuch as he bound himself to vacate the said lot when so requested by Dr. Matanzo;

"2. Because José Hernández did not build in good faith on the lot of Dr. Matanzo, but entered upon the said lot without the consent of Dr. Matanzo, and it was when Matanzo demanded that he remove the house which he had built that he agreed to enter into the lease contract with Dr. Matanzo; consequently José Hernández can not claim protection under sections 370, 455 and 456 of the Civil Code;

"3. Because when the Marshal of the Municipal Court of San Juan demanded that he remove the house that he had built on the lot of Dr. Matanzo the said José Hernández did not require him to make an appraisal or valuation of the part of the house which the marshal was going to destroy in accordance with the writ of execution issued by the Municipal Court of San Juan, as provided for in section 18 of the Unlawful Detainer Act which reads as follows:

" 'The fact that the settler or tenant makes claim for work performed, plants, or any other thing which can not be removed from the property, shall not be an obstacle to his ejectment. In such case the marshal shall proceed to make the ejectment without delay and after it has been effected, he shall, at the request of the interested party, proceed to make a valuation of the property at the cost

of the claimant, after the appointment of an expert to be designated by the interested parties, by mutual consent; and in case of a disagreement, three experts shall be appointed, one by each of the parties and the third by the marshal. After the valuation has been made and the result thereof has been received by the marshal in writing signed by the experts, the interested and said official, it shall be returned to the court with the order of execution; the right being reserved to the defendant to bring an action before the proper court to recover the amount assessed, to which he thinks himself entitled.'

"The plaintiff not having availed himself of that statute, we understand that he waived his right, if any he had, to claim the value of the part of the house which was destroyed because it was built on Dr. Francisco Matanzo's lot. Having no right to be indemnified for the value of the part of the house destroyed, consequently he has no right to collect the rent that said house may have produced.

"It was not proved at the trial that the house referred to was rented during the time that elapsed from the date on which the house was destroyed to December 21, 1922."

We have copied the whole argument of the appellants for the purpose of deciding the question of their liability under their aspect of the case.

The evidence shows that Hernández built his house on land believed by him to belong to Teresa Soriano, agreeing to pay and paying to said Teresa Soriano a certain monthly sum as rent of the land; that later he was informed by Dr. Matanzo that the house was partly on land of Soriano and partly on land of Matanzo, whereupon he agreed with the latter to pay him a certain monthly rent, which he did not pay, and to leave the lot at his free disposal on demand. Admitting that all of that is true, was the destruction of the house justified in the action of unlawful detainer? By no means. We live under the protection of laws that are construed by the courts when a conflict arises, and here the only question submitted by Matanzo to the municipal court when the conflict arose between him and Hernández was the eviction of Hernández from a lot which was not even duly

described. The property of a person can not be destroyed by the drastic means employed in this case without the assumption of the consequent liability. The municipal court never ordered its destruction.

The value of the house fixed in the judgment is supported by the evidence. The only doubtful question is the value of the income from it. It was a frame house divided into three apartments of three rooms each. Nicolás Torres testified that he had a room in one of the apartments for which he paid five dollars monthly and that he knew that the rest of the house was rented when it was destroyed. Hernández, the plaintiff, testified that his income from the house was twenty-four dollars monthly and he occupied a part of it. This evidence was believed by the court who fixed the income at thirty-four dollars monthly, thus allowing ten dollars for the part occupied by Hernández. Hernández said that he lived in the back part of the house and did not state how much the rent would be. We only find a clear and sure basis for twenty-four dollars, and, therefore, the judgment should be modified to that extent.

The fifth and last assignment has no solid foundation. Although the marshal destroyed only a part of the house, the evidence shows that the other part remained unserviceable. The trial judge made an ocular inspection of the house and there is no reason for concluding that his judgment in relation to the rest of the evidence on that point was erroneous.

We will now consider the appeal taken by the plaintiff. The only error assigned is argued in his brief as follows:

"The judgment is that the defendants pay to the plaintiff the sum of $800.00 as the value of the house and $34.00 per month from August 7, 1922, to December 21, 1922, the date on which the complaint was filed, as an indemnity for the unreceived rent of the said house.

"The plaintiff prayed for not only the value of the house, but

also its rent from August 7, 1922, to the date on which the value of the house should be paid.

"Undoubtedly the obligation to pay the rent extended to the whole period of time from the loss of the property that produced the rent to the time of its return, as determined by law and established by the settled jurisprudence of this court.

"Consequently if the property can not be returned and in lieu thereof its value is to be paid, the rent must be paid from the day on which the claimant was deprived of the possession of the property until the day on which its value is paid to him, since that payment takes the place of the return of the property.

"Therefore, the judgment should order the payment of the $34.00 monthly, not until the date of the filing of the complaint, but until the day on which the $800.00 is paid as the value of the house."

As may be seen, the appellants do not cite concretely any statute or jurisprudence in support of their contention. The appellee filed no answer. The reasons why the trial court allowed the rent only up to the date on which the complaint was filed do not appear. Situations of this kind are too frequently encountered by this court and prevent the prompt decision of cases. Attorneys for both parties should cite clearly the law and jurisprudence applicable to each case.

Section 1073 of the Civil Code reads:

"Indemnity for losses and damages includes not only the amount of the loss which may have been suffered, but also that of the profit which the creditor may have failed to realize, reserving the provisions contained in the following sections."

And in the case of *Muriente* v. *Terrasa et al.*, 22 P.R.R. 686, this court applied the section cited and established the following doctrine:

"Section 1073 of the Civil Code provides that indemnity for losses and damages includes not only the amount of the loss which may have been suffered, but also that of the profits which may not have been realized, therefore the amount earned previously during a like period of time and under identical circumstances may be taken as a basis for computing the profits which the plaintiff failed to realize."

Section 1073 of the Civil Code is the same as section 1106 of the old Civil Code and it seems well to copy the following comments of Manresa:

"The basis and origin of indemnity having been stated in the preceding sections, the Code undertakes to specify therein in what that indemnity consists, determining later its scope according to cases.

"In conformity with the most evident justice and with the old Spanish and foreign laws, the first of these sections declares that the indemnity comprises two causes for damages, the two forms of damages that may be caused: depriving a person of what he already had, or preventing him from using what would have belonged to him, an old definition that coincides with the scholastic definition of resulting damage and discontinued profits (*daño emergente y lucro cesante*), which finds its basis in the doctrine of Paulo, as simply as it is clearly expressed in the words *mihi abest quantumque lucrari polui*.

"In both cases the reality of the damage and the justice of reparation are similarly evident; yet with all this and when we arrive at the practical efficacy of the right to indemnity, the distinction indicated, which may seem a subtle theory, has undeniable importance, because, translating itself into a very different and difficult appreciation of evidence and this related to what has been said, the courts, distrusting all claim for damages, make its success even more improbable when the damages involved are those supposed to be caused under the second of such forms, that is, depriving a person of the profit that he should have received.

"And it is easily understood that so it happens, because in the end the loss suffered always leaves some sign that would show the commission of the wrong and since a thing that existed is involved, it is proper to determine in what it consisted; while on the other hypothesis when profits that were not obtained are claimed, even under the same principle of justice, although the damage suffered may be greater, in this there is a fatal concurrence of future, contingent, variable, and, above all, disputable characters that contrast notably with those relative to a certainty of evidence and facility of appreciation.

"The evident generality of these sections, which are applicable to all kinds of obligations and in relation to the special provisions of each one. of these, as has been recognized, *e. g.*, for the lease (Judgment of the Supreme Court of February 12, 1896) and their

fullness of expression, even if some restrictions are contained in section 1107, cause and will cause their continued citation; but do not prevent their being strictly interpreted by the court whose judgment, as we have already indicated in commenting on another section, also ample and consonant with these, sec. 1101, does not remain unfounded.

"As we have then said, the jurisprudence has continued after the Code, as was logical, inasmuch as the latter does not suppose a change in doctrine, formulating its own whose principal grounds are the necessity of strong evidence, the logical assertion that the burden of proof is on the person who claims the indemnity, and the also logical assertion that the appreciation of that evidence corresponds, as is generally the case, to the trial court with the consequent difficulty in the admission of the recourse on which that appreciation is imposed.

"Those declarations, whose extraordinary importance going beyond the order of procedure reach the efficacy of these substantive precepts, are repeatedly formulated in nearly all decisions involving a question of indemnity, it having to be noted that on the sections under discussion jurisprudence lacks the necessary legal support for its judgment as regards the exigency of evidence; and thus the judgment of February 12, 1896, after citing these sections and expressing its conformity, says in relation to the damages to which reference is made: 'damages thus circumscribed, and frustrated profits which therefore should be rightfully justified by the evidence which the law authorizes.'

"Knowing the criterion of the courts, especially the Supreme Court, what could be called 'forensic prudence' advises, besides appeasing the litigant's passion and moderating as far as possible the claims for losses and damages, to be exquisitely careful in the proving of the same; and also, as regards their amount, to prefer leaving it to the result of the proof rather than to determine a fixed sum in the complaint which may lead, by reason of any deficiency in the probatory means, to the defendant's acquittal." 8 Manresa, Commentaries on the Civil Code, pages 97, 98 and 99.

Does that strong evidence, the solid ground which jurisprudence demands, exist in this case?

In considering the appeal taken by the defendants we said that such evidence and such grounds did exist in regard to the monthly sum of twenty-four dollars. The ques-

tion now is whether the profits not realized continued only until the date on which the complaint was filed, as was held by the trial court, or extends to the date on which the debtor should pay to the creditor the value of the house.

We think the same reason that exists for the second period exists for the first. On the issue as joined the defendants were considered liable for the destruction of the house. The house can not be returned and in lieu thereof payment of its value, eight hundred dollars, was ordered. If the house had remained as it was before its destruction, it is logical that it would have continued to produce the same rent. Until the plaintiff is paid the value of the house the rent that he would have received constitutes the unrealized profit.

The question of expenses has not been raised. In this respect perhaps it would be well to recall that the plaintiff occupied part of the house and that this benefit was eliminated as being undetermined. One thing could compensate the other and so the sum of twenty-four dollars is equitable.

For the foregoing reasons the judgment appealed from should be modified by striking out "up to December 21, 1922, the date of filing the complaint, at $34.00 monthly," and substituting for it "up to the day on which this judgment is satisfied, at $24.00 monthly." And as modified affirmed.

Mr. Justice Wolf took no part in the decision of this case.